**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABDERRAHIM TNAIB ) <br> 4856 Arlington Boulevard ) <br> Arlington, VA 22204 ) <br> ) Case No. <br> Plaintiff, ) <br> vs. ) <br> ) <br> DOCUMENT TECHNOLOGIES, INC. ) <br> 2000 M Street, N.W., Suite LL 03 ) <br> Washington, DC 20036 ) <br> ) <br> -and- ) <br> ) <br> JAMES MAGUIRE ) <br> ) <br> Defendants. ) | |

**COMPLAINT**

Plaintiff Abderrahim Tnaib ("Plaintiff" or "Tnaib"), by and through his undersigned counsel, brings this action for injunctive relief and damages and to secure protection of and to redress the deprivation of rights secured by pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§2000e et seq. ("Title VII"), 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981") and the District of Columbia Human Rights Act of 1977, as amended September 2002 (D.C. Code, Title 2, Chapter 14 ("DCHRA"), and for his Complaint states as follows:

**Parties**

1.  Plaintiff is a 38 year-old male of Middle Eastern descent (Morocco), residing at 4856 Arlington Boulevard, Arlington, Virginia 22204.

2. Tnaib was employed by Defendant Document Technologies, Inc. ("Defendant" or "DTI") as a Senior Account Manager in their Washington, D.C. branch office, located at 2000 M Street, N.W., Suite LL 03, from April 2001 through November 2003.  By virtue of his employment with Defendant, Tnaib was at all relevant times an "employee" within the meaning of Title VII and the DCHRA.  Tnaib was a diligent, hardworking, and trustworthy employee from the inception of his employment at DTI through the termination of his employment with Defendant. Defendant maintains its corporate headquarters at 2 Ravinia Drive, Suite 850, Atlanta, Georgia 30346.

3. Defendant, James Maguire ("Maguire"), is an individual whose current address is unknown.

4. Defendant DTI does business in the District of Columbia by virtue of its ownership and operation of the DTI branch office located at 2000 M Street, Suite LL 03, Washington, D.C., 20036. Defendant is, and was at all relevant times, an "employer" within the meaning of Title VII and the DCHRA.  Defendant is, and was at all relevant times, engaged in an industry affecting commerce and had fifteen or more employees for each working day in all calendar years since at least 2000.

## Administrative Prerequisites

5. On or about June 18, 2004, Plaintiff filed a charge of discrimination with the District of Columbia Office of Human Rights ("DCOHR") alleging unlawful discrimination based on his race, national origin, and retaliation.

6. On or about August 4, 2004, Plaintiff filed a charge of discrimination with DCOHR, which was dual-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful discrimination, based upon his race, national origin and retaliation.

7. On or about May 24, 2005, Plaintiff filed a completed form for Withdrawal of Charge of Discrimination with DCOHR, pursuant to D.C. Code § 2-1403.04(b), in order to request a Right to Sue Letter from the EEOC.

8. On or about May 27, 2005, DCOHR administratively closed Plaintiff's Charge of Discrimination with no finding made on the merits of the allegations.

9. On or about June 7, 2005, Plaintiff requested the issuance of a Right to Sue Letter from the EEOC.

10. On or about June 20, 2005, the EEOC issued to Plaintiff a Notice of Right to Sue Letter.

11. Plaintiff has fully satisfied all required conditions precedent to this action.

### Jurisdiction and Venue

12. This Court has jurisdiction over Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(3), inasmuch as this is the judicial district in which: (1) the unlawful employment practices herein described are alleged to have been committed; (2) the employment records relevant to such practices are maintained and administered; (3) the Plaintiff would have worked but for the employment practices of Defendant; and (4) the Defendant has offices. This Court has supplemental jurisdiction over Plaintiff's state law claims, including those brought under the DCHRA pursuant to 28 U.S.C. § 1367(a) and § 2-1403.16 of the District of Columbia Code, inasmuch as the state law claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), inasmuch as (a) a substantial part of the events or omissions giving rise to Plaintiff's

claims arose in this District, (b) Defendant may be found in this District, and (c) Defendant is subject to personal jurisdiction in this District.

### General Allegations

14.     Defendant has engaged in a pattern and practice of acts that have discriminated against Plaintiff in his employment on account of his race, color, national origin and ethnic characteristics associated with his national origin. Defendant has also applied several of its policies against Plaintiff in a disparate manner based upon his race, color, national origin and ethnic characteristics associated with his national origin. As a result, Defendant's policies and practices have resulted in not only in the disparate treatment of Plaintiff, but they have also had a disparate impact on employees of Middle Eastern descent in general.

15.     Commencing in May 2003, Tnaib was forced to endure a systematic pattern of harassment and discrimination by Defendant, James Maguire, a Caucasian Production Manager. Maguire would on a day-to-day basis constantly berate Tnaib in the office and address him as "camel boy", "Osama", "Osama Bin Laden", "stupid Moroccan" and/or "dumb Moroccan". He would routinely tell Tnaib to "work his Moroccan magic on the client" and when upset would order him to "go home you camel." This abusive behavior by Maguire created a hostile work environment for Tnaib.

16.     On or about August 12, 2003, Maguire entered Tnaib's work space, and removed a framed photograph of Tnaib from his desk. Maguire then proceeded to superimpose Tnaib's photograph over a picture of an Al Qaeda terrorist suspect featured in a *Washington Post* newspaper article and made multiple photocopies of it. He then distributed the photocopies of this article by hand to Defendant's employees and boasted, "Hey, look what I did! You gotta take a look at this. This is classic, this is great!" Maguire also posted the photocopies with tape on the

delivery doors of the "Orders Out Section" of Defendant's offices. Later that day, Defendant, by and through its employee, Scott Heon, a Caucasian Managing Partner of the office, was given a photocopy of the article Maguire had produced. Heon looked at the photocopy and smiled before discarding it into a trash can in his office. Upon returning to the office later that day, Tnaib saw the photocopies taped to the delivery doors and was extremely upset, embarrassed, humiliated, and bewildered. He removed the photocopied articles and retreated back to his office in disbelief. Immediately thereafter, Tnaib avoided any direct contact with Maguire, and tolerated his constant discriminatory behavior.

17. Commencing in August 2003, Defendant, by and through their employee, Maguire, created a hostile work environment for African-American employees as well. Maguire, on a daily basis, would repeatedly make offensive racial comments to Defendant's African-American employees. He would also make derogatory and insensitive statements about African-American Afro, braid, and corn row hairstyles, and would inquire about the food that African-American employees were eating for lunch. Upon seeing African-American employees having their lunch, Maguire would regularly ask, "You black people really do love your fried chicken and pork don't you?" Moreover, Maguire stated, "I do not intend to hire any more Black managers because they're just not reliable", and also favored the hiring of Korean employees because he claimed that they had, according to him, "a stronger work ethic than Blacks." When African-American employees attempted to correct Maguire's racist slurs he would say that they were "getting ghetto" on him.

18. In or about early November 2003, Maguire antagonized and intimidated Tnaib and an argument ensued. Tnaib verbally attempted to respond to Maguire's racial slurs and ethnic insults, directed at him inches away from his face, and Maguire followed him around the

office while continually harassing him. Tnaib hastily retreated away from the approaching Maguire, and in doing so slammed an office door behind him, before finally seeking refuge in his office. Maguire's intimidation and harassment of Tnaib violated Defendant's policy prohibiting violence in the workplace, specifically cited as Policy Number 812 in their Human Resources Policy Manual for Managers and Employees.

19.     Tnaib filed a formal complaint against Maguire with Heon immediately after this incident. On or about November 10, 2003, Tnaib was terminated by Heon for "inappropriate behavior" in the workplace.

### Count I – Unlawful Discrimination in Violation of Title VII – Against DTI

20.     The averments of paragraphs 1 through 19 are incorporated herein by reference.

21.     Defendant intentionally discriminated against Tnaib by terminating his employment on the basis of his race, color, national origin, ethnic traits associated with his national origin, and in retaliation for complaining about Maguire's harassment of him. Other employees outside of Tnaib's protected classifications were not terminated for committing violations of Defendant's corporate policies.

22.     Due to its actions noted above, Defendant has intentionally applied its disciplinary policies to Plaintiff in a disparate manner based upon Plaintiff's race, color, national origin and ethnic traits associated with his national origin. In the past, Defendant has followed the aforementioned disciplinary policy with respect to other non-Middle Eastern employees, and employees of national origins different from those of Plaintiff, who have been charged with similar, or more serious, infractions. Defendant has allowed these other employees to continue to work after committing serious policy violations, including non-Middle Eastern employees committing such violations.

23. The actions of Defendant noted above are part of an overall environment in the workplace of disparate treatment of employees, specifically, one that favors non-Middle Eastern and other non-minority employees over employees of Middle Eastern descent. For example, Maguire's creation of a hostile work environment for Tnaib and other non-Caucasian employees, while known by Defendant from the onset in May 2003, was never addressed, nor was Maguire ever verbally counseled or disciplined for his actions.

24. The racial composition of Defendant's office staff is further evidence of Defendant's discriminatory practices. Although there are at least thirty employees at their Washington, D.C. location, there is only one Middle Eastern employee. This racial discrepancy is proof that Defendant's policies have a disparate impact on Arab-American applicants, employees and former employees.

25. Defendant intentionally discriminated against Plaintiff with respect to terms and conditions of his employment, including but not limited to, compensation, harassment, the creation of a hostile work environment, and termination, based on his color, race, national origin, and/or ethnic traits associated with his national origin in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

26. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

27. Defendant's policies have resulted in the disparate treatment of Plaintiff.

28. Defendant's policies and procedures have also had a disparate impact on Plaintiff. Such procedures are not valid, job-related, or justified by business necessity. There are practices and procedures available to Defendant which would not have a disparate impact on Plaintiff and

those similarly-situated, and which would have equal or greater validity and job relatedness, but Defendant has refused to consider or use such procedures.

29. As a direct and proximate result of said intentional acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment and damage to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(b) awarding Plaintiff back pay, front pay prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(c) awarding Plaintiff compensatory and punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(e) ordering any other legal and equitable relief this Court deems to be just and appropriate.

**Count II  Unlawful Retaliation in Violation of Title VII – Against Both DTI and Maguire**

30. The averments of paragraphs 1 through 29 are incorporated herein by reference.

31. In compliance with DTI's Policy Manual, Tnaib filed a formal complaint against Maguire with Heon immediately after the November incident. DTI's manual, Policy Number 706, clearly states, "Any reported allegations of harassment, discrimination or retaliation will be investigated promptly", and "[T]he investigation may include individual interviews with the parties involved, and where necessary, with individuals who may have observed the alleged

8

conduct or may have other relevant knowledge." In direct contravention of Defendant's own policy, Heon never conducted any investigation of this incident whatsoever, or the prior August 12, 2003 incident of which he had personal knowledge of.

32. On or about November 10, 2003, Tnaib was terminated by Heon in retaliation for his filing his complaint against Maguire. Heon told Tnaib his employment was being terminated for his "inappropriate behavior" towards Maguire. Tnaib was never given an opportunity to explain and/or defend his alleged "inappropriate behavior". Moreover, Defendant never followed or applied its own policy for progressive discipline to Tnaib. Pursuant to DTI's Policy Manual, Policy Number 705, "Document Technologies, Inc. supports the use of a process called "progressive discipline" to address conduct issues and that such progressive discipline "may also be appropriate in certain instances involving misconduct". Defendant summarily terminated Tnaib with utter disregard to its own policy and Tnaib's livelihood, professional reputation, and sensitivities. Upon being asked by employees if Maguire was going to be disciplined for his behavior, Heon reportedly replied, "I have to do something, because he was sick of it." Maguire was never disciplined as a result of his actions towards Tnaib, despite such actions being a violation of Defendant's policy prohibition against violence in the workplace. Defendant's Policy Manual unambiguously states, "[V]iolations of this policy by any individual on DTI property will lead to disciplinary action, up to and including termination and/or legal action as appropriate."

33. Defendant's actions described herein constitute a violation of the anti-retaliation provisions of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-3(a).

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(b) awarding Plaintiff back pay, front pay prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(c) awarding Plaintiff compensatory and punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(e) ordering any other legal and equitable relief this Court deems to be just and appropriate.

**Count III – Violation of 29 U.S.C. § 1981 – Against Both DTI and Maguire**

34. Plaintiff incorporates and realleges paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. By virtue of Defendant's actions, Plaintiff was subjected to intentional discrimination and denied the benefits and privileges of employment solely because of his race, color, and ethnic characteristics associated with his national origin in violation of 29 U.S.C. § 1981.

36. As a direct and proximate result of said intentional acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment and damage to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(b) awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(c) awarding Plaintiff compensatory and punitive damages in an amount no less than $500,000;

(d) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(e) ordering any other legal and equitable relief this Court deems to be just and appropriate.

### Count IV – Discrimination Under the DCHRA – Against Both DTI and Maguire

37. The averments of paragraphs 1 through 33 are incorporated herein by reference.

38. By virtue of Defendant's intentional actions, Plaintiff was discharged or otherwise discriminated against with respect to his compensation, terms, conditions and/or privileges of employment on the basis of his race, color and national origin in violation of § 2-1402.11(a)(1) and (b) of Subchapter II of the DCHRA (Title 2, Chapter 14 of the District of Columbia Code).

39. As a direct and proximate result of said intentional acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment and damage to his reputation.

40. Defendant's employment practices and hostile work environment noted above have had a disparate impact on Arab-American applicants, employees and ex-employees.

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(b) awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(c) awarding Plaintiff compensatory and punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(e) ordering any other legal and equitable relief this Court deems to be just and appropriate.

### Count V – Unlawful Retaliation Under DCHRA – Against Both DTI and Maguire

41. The averments of paragraphs 1 through 40 are incorporated herein by reference.

42. The defendant's actions as described herein constitute impermissible retaliation for reporting a violation of the DCHRA.

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(b) awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(c) awarding Plaintiff compensatory and punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(e) ordering any other legal and equitable relief this Court deems to be just and appropriate.

## **Jury Demand**

Plaintiff demands a trial by jury.

Dated:  September 14, 2005                              Respectfully submitted,


                                                        //s//

                                                        _____
                                                        Howard N. Berliner (D.C. # 451314)
                                                        berlinerfirm@comcast.net
                                                        BERLINER LAW FIRM, LLC
                                                        1920 N Street, N.W.
                                                        Suite 300
                                                        Washington, D.C. 20036
                                                        (202) 429-0093

                                                        **Attorney for Plaintiff**