**EXHIBIT A**

Home > For Lawyers > Ethics > Legal Ethics > Opinions

# Opinion 129

### Interviews With Employees of an Adverse Party

**Synopsis**

DR 7-104(A)(1) bars a lawyer who represents a client with a claim against an organization from contacting, without the consent of opposing counsel, any person who can bind the organization as to the litigation. The Rule does not bar contacts with employees of the organization who do not have such authority. However, before conducting an interview with such an employee, the attorney or his agent must disclose his identity and the fact that he represents a party who has a claim against the employee's employer.

**Facts**

The inquirer represents a plaintiff in an employment discrimination suit against a large corporation. He has asked the Committee whether he ethically may interview two lower level management officials whose sole function in the selection process which is the subject of the litigation was to make recommendations with respect to his client's advancement.

**Discussion**

The relevant Disciplinary Rule which governs communications with an adverse party, DR 7-104, provides:

> (A) During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
>
> (2) Give advice to a person who is not represented by a lawyer other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.

The issue raised by this inquiry is whether the employees of the defendant corporation whom the inquirer wishes to interview are "parties" within the meaning of DR 7-104(A)(1). We conclude that they are not.

With respect to corporate employees, the ABA Committee on Ethics and Professional Responsibility has limited the definition of "party," as used in DR 7-104(A)(1), to individuals who can "commit the corporation because of their authority as

corporate officers or employees or for some other reason the law cloaks them with authority." ABA Informal Op. 1410 (1978) (communication with officers and employees of nationwide corporation). The rationale underlying this definition is that when a person can commit the corporation, opposing counsel must regard them as an "integral component of the . . . corporation itself and therefore within the concept of a 'party' for the purposes of the Code." *Id. See also* ABA Informal Op. 1377 (1977) (communication with officer of municipal corporation).

These precedents, however, do not completely resolve the issue presented in this inquiry. Does the definition of "party" include only those who have authority to commit the corporation with respect to the litigation, or does it extend to those who have authority to commit the corporation with respect to the underlying matter but not with respect to the litigation? For example, in an employment discrimination case against a large corporation, the officials who have authority to make litigation decisions are not likely to be the same officials who made the contested hiring or promotion decisions. Plainly, DR 7-104(A)(1) prohibits contact with the former without the consent of counsel, but does it also prohibit contact with the latter? We conclude that it does not.

ABA Formal Opinion 127 (1934) is squarely on point. There the Committee held under former Canon 9 that an attorney for a plaintiff injured in a store could interview the store's clerks who were witnesses to the accidents.[1] "Canon 9 does not forbid interviews with employees of the opposite party," the Committee stated. "It is the party (not the clerk in the store) who is represented by counsel." *Id.*

This Committee's Opinion 80, which addressed the question of what government officials are covered by the prohibition of DR 7-104(A)(1), also supports our conclusion here. In that context, we held that:

> The officials who are deemed to be government "parties" with whom communications under the rule are restricted are quite limited, including only those persons who have the power to commit or bind the government with respect to the subject matter in question, whether it be the initiation or termination of litigation, execution or approval of a contract, issuance of a license, award of a government grant, or a rulemaking function.

The rationale that we adopted in Opinion 80 supports the result that we reach here:

> It is of course important that the identification of such officials be no more inclusive than necessary to serve the purposes of the rule, so that there will be no unnecessary hindrance to the search for information or the pursuit of grievances. The lines may not be drawn so widely as to include all government employees at whatever level of responsibility, for of course not all employees can speak for or commit their employer, whether it be public or private. Nor should the rule extend to government employees

who are merely witnesses, or otherwise sources of information, but who have no decisional authority with regard to the subject matter of the representation, for such an extension would inhibit the search for truth without protecting any governmental interest legitimately sought to be protected by the rule.[2]

A similar balancing of the competing policies at stake in the instant inquiry supports a limitation on the scope of DR 7-104 (A)(1). In Opinion 80, we noted that the following policies have been advanced in support of the prohibition against communications with an adverse party: (1) the presumed imbalance of skill between a lawyer and a layman, giving one an unfair advantage over the other; (2) the risk that an uncounseled party will make admissions or concessions or reach judgments from which his lawyer could protect him; and (3) the risk that a lawyer might be compelled to become a witness in a case or forced to choose between advancing his client's interests and not overreaching in communicating with an unprotected adverse party. Opinion No. 80.[3] However, the Committee also expressed skepticism as to the validity of these concerns. "The extent to, which these dangers exist is, in our view, open to serious question." *Id.*[4]

On the other hand, restrictions on interviews with potential witnesses frustrate the policy that lawyers should be able to gather all relevant facts in an expeditious and economic manner. As the ABA Committee on Ethics and Professional Responsibility long ago stated, "[t]he ascertainment of truth is always essential to the administration of justice and it is the duty of the attorney to learn the facts by every fair means within his reach." ABA Formal Op. 117, *supra*.

In our Opinion 80, the Committee balanced the costs of restricting contacts with prospective witnesses against the purported dangers of such contacts. We opined that "where the dangers are not illusory, they are nevertheless outweighed by the cost to clients of applying DR 7-104(A)(1), whether those clients are involved in litigation or other legal matters with the government, or private corporations or individuals." Applying this reasoning to the instant inquiry, we believe that interpreting DR 7-104(A)(1) to protect all employees of a large organization would be too restrictive and would conflict with the policy of unhindered and inexpensive access to non-party witnesses in the litigation context. Such a restrictive application of the rule would require a party to expend greater time, money, and resources in obtaining the same information through informal interviews. These manifest burdens, we believe, outweigh any potential harm that might flow from permitting counsel to interview employee-witnesses of the sort involved in this inquiry.

The dissent argues that DR 7-104(A)(1) should protect an organization from the possibility that its employees might make damaging admissions if opposing counsel is permitted to interview employees without the consent of the organization's counsel. However, we reject the contention that the Rule should be used as an obstacle to obtaining relevant information. The argument that counsel should be able to control the flow of information from non-party witnesses is simply inconsistent with the principle that litigation is a search for truth rather than a sporting contest. To require the consent

of counsel for interviews with such witnesses would place too heavy a burden on the fact-gathering process.

Accordingly, we conclude that DR 7-104(A)(1) requires consent of opposing counsel only for contacts with employees of an opponent organization who have the authority to bind the organization with respect to the pending litigation. Since the employees whom the inquirer wishes to contact are not individuals who have such authority, there is no ethical bar to contacting these employees.

In conducting such an interview, a lawyer must not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." DR 1-102(A)(4). Moreover, the majority of the American Bar Association opinions on the subject of witness interviews hold that an attorney has an affirmative duty to disclose his identity as an attorney representing a party with a claim against a prospective or actual defendant, and we adopt this approach.

ABA Formal Op. 117, *supra*, held that an attorney for a claimant may interview employees of a prospective defendant, "provided no deception is practiced in obtaining their statements and they are informed that the person interviewing them is the attorney for the claimant or represents him."[5] Two opinions dealing with interviews of prospective defendants not yet represented by counsel also impose an affirmative duty on the attorney and his investigators to disclose that they are seeking information on behalf of a potential claimant. ABA Informal Op. 908 (1964); ABA Informal Op. 670 (1963). While there are factual distinctions between a defendant and a witness-employee of a defendant, we do not think that the differences are sufficient to diminish the duty to disclose.

ABA Informal Op. 581 (1962) takes a more permissive approach with respect to disclosure, which we decline to follow in the circumstances presented by this inquiry. The inquiry asked whether counsel for a criminal defendant or his investigator must inform a witness whom he is interviewing that he comes from the defense camp. The Committee responded that "if inquiry is made by the witness of the investigator as to whom he represents, it would be the duty of the investigator to disclose that he comes from the defense. Absent such inquiry, we think there is no duty on defense counsel or his investigator to inform the witness of whom he is representing."

Whether we would agree that there is no duty of disclosure in the circumstances presented by ABA Informal Op. 581 is a question we need not decide at this time. It is sufficient for our present purposes to note that the inquiry there concerned an interview by counsel for a criminal defendant of a witness who was not an employee of the prosecutor, and therefore the opinion is distinguishable from the instant inquiry. If the circumstances presented by this inquiry, we conclude that an attorney or his agent must disclose his identity and the fact that he represents a client with a claim against the employee's employer.

Finally, we note that in contacting employees of an organization, a lawyer should take care not to violate DR 7-104 (A)(2), which forbids giving advice to an unrepresentative person, other than advice to secure counsel, when that

person's interests are or have a reasonable possibility of being in conflict with the interests of the lawyer's client. The need for care on this score is particularly acute if there is any possibility that the employee being interviewed is a potential defendant.

**Dissent of Two Members to Opinion No. 129**

The Committee's Opinion No. 129 concludes that the employees of a corporation sued upon charges of employment discrimination, "whose sole function in the selection process which is the subject of this litigation was to make recommendations with respect to" the plaintiff's advancement, may be interviewed by plaintiff's attorney. The Opinion bars communication without the consent of opposing counsel only with those employees of an adversary organization who can "bind" the organization as to the subject litigation. This category is interpreted to mean those officers or employees who can decide for the corporation on how to end the litigation.

We believe the Committee's Opinion gives too narrow a reading to the prohibition of DR 7-104(A)(1), which bars a lawyer from communicating or causing another:

> to communicate on the subject of the representation with a party he knows to be represented by a lawyer in the matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

In our view, the applicable authorities would also bar such communications with any employee who could bind the organization, by admissions, or otherwise, as to the matters which gave rise to the litigation. The obvious purpose of DR 7-104(A)(1) is to prevent a lawyer from taking unfair advantage of an opposing party, and to assure that the opposing party has the full measure of the right to be represented by counsel. This purpose of DR 7-104(A)(1) is not fulfilled by limiting its coverage to individuals in an organization "who can bind it as to the litigation."

Most organizations, including corporations, can only act through their agents, and an agent whose acts allegedly create corporate liability in most instances becomes personally liable as well. As the Committee's Opinion recognizes, often those whose actions create the corporation's potential liability are not in positions of authority sufficient to make decisions about the ensuing litigation. For example, as we read the Opinion, it is perfectly proper for the attorney for a plaintiff in a personal injury case arising out of alleged negligent operation of a delivery truck, to give the employee who drove the truck a release or covenant not to sue and then, without advising the employee's attorney, interview that employee. The statements made by the employee in that set-ting would be admissible under Federal Rule of Evidence 801(d)(2)(D), and the rules of evidence of jurisdictions that have adopted a similar rule, as a statement by an "agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."[6]

While the Opinion gives only those with authority to "commit" or "bind" the organization with respect to the litigation and its settlement the protection of DR 7-104(A)(1), it also recognizes that the Rule's goal is more than to provide counsel's advice in the settlement phase; it agrees that one of the policies

underlying the prohibition is "the risk that an uncounseled party will make admissions or concessions or reach judgments from which his lawyer could protect him." It follows then that the Rule should preclude communications with individuals within an organization whose statements could bind the organization at trial. If the employee's or official's statement could be used as admission against the organization, the individual should not be contacted without the consent of the organization's counsel.

The scope of the prohibition will vary depending upon the size of the organization and the issues in dispute in the litigation. In a broad-scale antitrust case against a major corporation, the number of individuals knowledgeable as to the development of the corporate policies in dispute might be relatively small. If so, many corporate employees might be contacted to determine their knowledge of facts without the consent of the corporation's counsel because presumably they could not make admissions concerning the predatory intent of a corporate course of action.

In a sex discrimination suit against the same corporation, however, a dispositive admission could be procured from a low level supervisor in the corporation's smallest branch office. If the supervisor were to admit to plaintiff's attorney that the plaintiff was not hired or promoted because women are not permitted to hold certain positions in the company, such a statement would surely constitute an admission against the corporation.[7] We believe that in such a case the supervisor, as the agent of a party represented by counsel, should be available to opposing counsel only pursuant to the consent provided by DR 7-104(A)(1).[8]

The Committee's Opinion justifies its very restrictive determination of which persons within an organization are not to be freely communicated with by the argument that

> interpreting DR 7-104(A)(1) to protect *all* employees of a large organization would be too restrictive and would conflict with the policy of unhindered and inexpensive access to non-party witnesses in the litigation context. (Emphasis added.)

It does not follow that a broader spectrum of employees than those few who can "bind" the organization in the litigation will necessarily mean that *no* employee of the organization may be contacted without consent of the organization's counsel.

The group of persons whom the Opinion would include within DR 7-104(A)(1) is far too limited. For example, since individual directors of a corporation cannot bind the corporation, it would appear to follow from the Committee's Opinion that the members of the Board of Directors of a corporate defendant could be contacted without the consent of the corporation's attorney; that does not seem at all an appropriate or a bona fide application of the Rule.

With all due respect, we think that neither ABA Formal Opinion 127 (1934) nor this Committee's Opinion No. 80 supports the present Opinion. In Opinion No. 127, the issue was liability for an accident on the premises of a store, and there is no

indication that the store's clerks (that the Opinion found it to be ethically unobjectionable to be interviewed) had any responsibility for causing the injury. The matter of what government officials are deemed "parties" for purposes of DR 7-104(A)(1) is a question involving complex policy matters including the constitutional rights of access to government as well as other questions about governmental relationships.

The Opinion's reliance on ABA Informal Opinions 1377 (1977) and 1410(1978) also is misplaced. In both Opinions, the rationale was stated, in very general and ambiguous terms, to be that those who can "commit the corporation" [sic] are to be considered "within the concept of a 'party' for the purposes of" DR 7-104(A)(1). No elaboration of what is meant by the phrase "commit the corporation" is provided in either Opinion. Both Opinions say, however, that in the circumstances considered, "this right of the corporation to representation by counsel must prevail over opposing counsel's unrestricted access to officers and employees of the corporation." This rationale, supporting a conclusion that consent of the organization's counsel was necessary, is no authority for the present Opinion, which reaches a different conclusion.

As we see it, the virtue of the Committee's Opinion is its susceptibility to mechanical application. However, its vice is its inconsistency with the intent and purpose for DR 7-104(A)(1).

Lastly, we note that the ABA Model Code of Professional Conduct, in Comment upon the rule equivalent to DR 7-104(A)(1), states that the rule:

> . . . prohibits communications . . . with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Inquiry No. 82-11-17
Adopted: September 20, 1983

---

1. Canon 9 provided: "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel."
2. It may be argued that the "subject matter in question" includes both the pending litigation and the underlying decision which gave rise to the litigation. However, Opinion 80 was concerned with contacts by private lawyers in a wide variety of non-litigation circumstances where the government might be represented by counsel, and this fact accounts for the references to non-litigation matters in the opinion. Thus, we do not think that the Opinion 80 stands for the proposition that the rule extends to an individual who may have had responsibility for a decision that gave rise to litigation but who has no authority for the litigation. Indeed, the subsequent reference to employees "who have no decisional authority with regard to the subject matter of the representation" confirms this reading of the opinion. Moreover, extension of the Rule to parties who no

longer have authority would be inconsistent with the underlying rationale of Opinion 80 that a party should not be unduly hindered in the quest for relevant evidence.

3. *See also* EC 7-8 ("[t]he legal system . . . functions best when persons in need of legal advice or assistance are represented by their own counsel").
4. In reaching this view, Opinion 80 cited a law review article which challenges the traditional rationale for DR 7-104(A)(1). Leubsdorf, *Communicating With Another Lawyer's Client: The Lawyer's Veto and the Client's Interest*, 127 U. Pa. L. Rev. 683, 686–88 (1979).
5. Formal Op. 127 (1935) held that a lawyer representing a claimant can interview a witness who had been subpoenaed by the other side, provided that no deception is practiced by the lawyer. Although this opinion does not discuss an affirmative duty to disclose, disclosure seems implicit in the circumstances.
6. The same result might obtain even if the employee's statement were hearsay; *see* Rules 803(b)(3) and 801(d)(1).
7. *See* Fed. R. Evid. 801(d)(2)(D). Fed. R. Civ. P. 30(b)(6) is also relevant here. Certainly the officials and employees most likely to be designated as corporate representatives because of their unique knowledge of the corporation's policies, or its implementation thereof, should not be contacted without the corporate attorney's consent.
8. One of the dissenters is of the view that because DR 7-104(A)(1) seeks to prevent taking unfair advantage of a party, the Rule precludes opposing counsel from interviewing former employees of the organization without consent of the organization's attorney so long as the former employee's actions, when employed, might bind or commit the organization on a subject that is involved in the litigation.




**Program on Negotiation at Harvard Law School**
**Program of Instruction for Lawyers @ PON**
**JUNE 2007**

The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | **Directions/Parking**
©2007 District of Columbia Bar. All rights reserved. **Privacy Policy** | **Disclaimer** | **Author guidelines**