**EXHIBIT F**

Case 1:05-cv-01825-RMU    Document 28-7    Filed 01/12/2007    Page 2 of 6

*For Lawyers*

▸ **For Lawy**

▸ **For the Pub**

▸ **Inside**

Home > For Lawyers > Ethics > Legal Ethics > Opinions

## Opinion 287

### Ex Parte Contact With Former Employees of Party-Opponents

A lawyer may contact unrepresented former employees of a party-opponent without obtaining consent from that party irrespective of the position formerly held by the ex-employee in the opposing organization. Prior to any substantive communication, the lawyer must disclose to the former employee the lawyer's identity and the fact that the lawyer represents a party adverse to the ex-employee's former employer. During the communication the lawyer may not solicit privileged information of the party opponent.

### Applicable Rules

- Rule 4.2 (Communication Between Lawyer and Opposing Parties)
- Rule 4.3 (Dealing with Unrepresented Person)
- Rule 4.4 (Respect for Rights of Third Parties)

### Inquiry

The inquirer is a lawyer representing a client in an action against a corporation. He has asked the Committee whether, and under what circumstances, he may contact former employees of his party-opponent without first obtaining that party's consent.

### Discussion

District of Columbia Rule of Professional Conduct 4.2 (a) generally prohibits communication about the subject of a representation between a lawyer and a party known to be represented by another lawyer in the matter, unless the lawyer has prior consent of opposing counsel to the communication or is authorized by law to do so. The Rule does not expressly address the propriety of *ex parte* contact between a lawyer and a former employee of a party-opponent. The provisions and commentary of Rule 4.2, however, lead to the conclusion that *ex parte* contact between a lawyer and a former employee of a party-opponent is permitted, subject to observance of certain safeguards.

Significantly, Rule 4.2 does not bar all communications between a lawyer and nonparty employees of an opposing party. Rather, only communications with nonparty employees who have the authority to bind the opposing party in the matter are proscribed. Toward that end, Rule 4.2 provides in pertinent part:

> (a) During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee of the opposing party without obtaining the consent

of that party's lawyer. However, prior to
communicating with any such nonparty
employee, a lawyer must disclose to such
employee both the lawyer's identity and the fact
that the lawyer represents a party with a claim
against the employee's employer.
(b) For purposes of this rule, the term "party"
includes any person, including an employee of a
party organization, who has the authority to bind
a party organization as to the representation to
which the communication relates.

D.C. R. Prof. Conduct 4.2 (1996).[1] Comment [3] to Rule 4.2
elucidates the meaning of "person . . . who has the authority to
bind a party organization," providing that "[t]he Rule does not
prohibit a lawyer from communicating with employees of an
organization who have the authority to bind the organization
with respect to the matters underlying the representation if
they do not also have authority to make binding decisions
regarding the representation itself. A lawyer may therefore
communicate with such persons without first notifying the
organization's lawyer." As a result, Rule 4.2 prohibits
communication only with those employees of a party opponent
who hold or exercise the power or authority to decide, by
conduct or admission, the organization's position(s) in the
matter.

Rule 4.2 effectively memorialized the view expressed in
Opinion 129. In that Opinion—decided under DR 7-104, the
predecessor to Rule 4.2—this Committee found that the
prohibition against communication with adverse parties did not
prohibit contact with current employees who could not bind an
organization with regard to the litigation. See D.C. Bar Legal
Ethics Comm. Op. No. 129 (1983). In Opinion 129, and before
that in Opinion 80, we noted that several policies supported the
prohibition of contact with adverse parties: "(1) the presumed
imbalance of skill between a lawyer and a layman, giving one
an unfair advantage over the other; (2) the risk that an
uncounseled party will make admissions or concessions or
reach judgments from which his lawyer could protect him; and
(3) the risk that a lawyer might be compelled to become a
witness in a case or forced to choose between advancing his
client's interests and not overreaching in communicating with
an unprotected adverse party."

In both Opinions, we balanced these policies with the broad
policy that litigants should have access to all relevant, non-
privileged information regarding a matter and, derivatively,
lawyers should be allowed to find facts as quickly and
inexpensively as possible. We found that the potential dangers
of ex parte contacts were outweighed by the additional burden
to litigants of an expansive prohibition on ex parte contacts
with all employees of an adverse party. This interpretation was
subsequently embodied in the narrow restriction of Rule 4.2.

A similar approach is warranted for former organizational
employees. Indeed, neither the text nor the underlying policies
of Rule 4.2 provide a basis for extending its prohibition to
former employees. Because former employees, as a general
rule, cannot bind the organization by decisionmaking, by
conduct, or by admission with respect to a pending or
prospective matter, Rule 4.2 does not prohibit ex parte
contacts with these individuals. That former employees may
possess information prejudicial to their former employer, or
may have engaged in conduct creating potential liability for
that employer, is a matter of historical fact. It does not,
without more, place those former employees in a position to

bind the organization in the manner contemplated by Rule 4.2.

Consistent with this approach, a majority of state and federal courts that have considered this issue have concluded that *ex parte* contact with former employees of a party opponent is permissible. *See, e.g., Spencer v. Steinman*, 179 F.R.D. 484, 491 (E.D. Pa. 1998); *H.B.A. Management Inc., v. Estate of Schwartz*, 693 So. 2d 541, 543-46 (Fla. 1997); *Aiken v. Business and Industry Health Group, Inc.*, 885 F. Supp. 1474, 1478-79 (D. Kan. 1995); *United States v. Western Electric Co.*, 1990 WL 39129, at *I (D.D.C. Feb. 28, 1990) (interpreting Model Rule 4.2); *Wright v. Group Health Hospital*, 691 P.2d 564, 569 (Wash. 1984). The ABA has also interpreted Model Rule 4.2 to permit *ex parte* contacts with former employees. *See* ABA Formal Op. 91-359 (1991).

Consideration of the policies underlying Rule 4.2 supports the conclusion that lawyers may make *ex parte* contact with unrepresented former employees of party-opponents. As the ABA noted in Formal Opinion 95-396 (1995), Rule 4.2 is not designed to protect against disclosure of prejudicial facts. Instead, the Rule is targeted at protecting the attorney-client relationship and safeguarding against a litigant being injured by binding *ex parte* disclosures. Since a principal purpose of Rule 4.2 is to foster and protect the lawyer-client relationship, not to restrict the flow of relevant, non-privileged information, interpreting Rule 4.2 to forbid *ex parte* contacts with former employees would require parties to spend more time, money, and resources by utilizing formal discovery to obtain information that could have been obtained informally. Such an expansive reading of Rule 4.2 would place too heavy a burden on the fact gathering process without protecting any legitimate interest sought to be safeguarded by the Rule.

At the same time, a lawyer does not have *carte blanche* with respect to the scope of communications with former employees of a party opponent. The most significant concern in such communications is the possibility that the former employees were privy to privileged information and that, without counsel present, they might be inclined to reveal this information to the opposing lawyer.[2] This concern is serious and a lawyer may not solicit information when communicating with former employees of a party-opponent that is reasonably known or which reasonably should be known to the lawyer to be protected from disclosure by statute or by an established evidentiary privilege.[3] We base this conclusion on Rule 4.4, which requires lawyers to refrain from using "methods of obtaining evidence that violate the legal rights of [third parties]." These rights include the former employer's right to protect its privileged information from disclosure.[4]

In order to reduce the possibility that privileged information is revealed in the *ex parte* communication or the occurrence of other hazards that Rule 4.2 is designed to prevent, a lawyer must at the outset disclose the lawyer's identity and the fact that the lawyer represents a party that is adverse to the ex-employee's former employer in pending or prospective litigation. Comment [3] to Rule 4.2 states that it is preferable to give this notice in writing. Rule 4.3 reinforces this protection by requiring the lawyer to take affirmative steps to avoid misunderstandings and assure that the former employee correctly understands the lawyer's role in the matter.

Suffice it to say, a lawyer should proceed cautiously in communicating with former employees of a party opponent. Certain former employees may be involved on an ongoing basis with the matter concerning which the contact is sought, or they may be engaged, on the basis of their knowledge and experience, to consult with organizational management or with

Case 1:05-cr-01849-JCH    Document 1257    Filed 01/12/2007

legal counsel in the matter. Of course, if the former employees are represented by their own counsel in the matter, the bar against communication without consent of that counsel applies unless that communication is authorized by law.

**Conclusion**

A lawyer may communicate with unrepresented former employees of a party opponent without consent from that party. At the outset, the lawyer must make the disclosures required by Rule 4.2. Throughout the communication, the lawyer must follow the dictates of Rules 4.3 and 4.4.

Inquiry No. 98-7-22
Adopted: October 20, 1998

---

1. D.C. has adopted a unique version of Model Rule of Professional Conduct 4.2. The Model Rule, in force and effect in a majority of states, does not contain sections (b) and (c), providing only that "[I]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do." *See* ABA Formal Op. 91-59 (1991) (Rule 4.2 prohibits contacts by a lawyer with employee of an opposing corporate party if the employee (a) has "a managerial responsibility" on behalf of the employer-corporation, or (b) is one whose act or admission in connection with the matter that is the subject of the potential communicating lawyer's representation may be imputed to the corporation, or (c) is one whose "statement may constitute and admission" by the corporation.)

2. *See, e.g., Zachair, Ltd. v. Driggs*, 965 F. Supp. 741 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (disqualifying counsel for, *inter alia*, violating Maryland Rule 4.2 by engaging in *ex parte* contact with the former general counsel of a corporate defendant whom counsel knew or should have known possessed substantial privileged information); *Camden v. State of Maryland*, 910 F. Supp. 1115 (D. Md. 1996) (holding under Maryland Rule 4.2 that a lawyer may not have *ex parte* contact with the former employee of a organizational party when the lawyer knows that the former employee was extensively exposed to privileged information).

3. In Op. 256 we concluded that where a lawyer receives documents containing client secrets or confidences of an adversary, and knows prior to examining the documents that the disclosure was inadvertent, Rule 1.15(a) requires the receiving lawyer to return the documents to the sending lawyer; the lawyer also violates Rule 8.4 (c) if the lawyer reads and/or uses the material. Whether a lawyer has received a party opponent's privileged information during communications with a former employee may be considerably more ambiguous than is the case with the receipt of privileged documents from opposing counsel, which itself is not always a model of clarity. In situations where counsel knows that a former employee's disclosure of clearly privileged information is not authorized by the entity

holding the privilege, however, a lawyer may violate Rule 8.4(c) if the lawyer uses the privileged information.

4. For example, in Formal Op. 91-359 (1991), the ABA Committee on Ethics and Professional Responsibility concluded that Rule 4.2 does not preclude contact with former employees of an opposing corporate party. The committee cautioned, however, that the attorney "must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employee's counsel are protected by the privilege. . . . Such an attempt could violate Rule 4.4 (requiring respect for the rights of third persons)." See also ABA Formal Op. 97-408, n.14 (1997) ("Gaining from a former government employee information that the lawyer knows is legally protected from disclosure for use in litigation nevertheless may violate Model Rules 4.4, 8.4(c) and 8.4(d). . . ."); Conn. Bar Ass'n Informal Op. 96-4 (1996) (Rule 4.4 precludes lawyer from reviewing and copying psychiatric records of client's ex-wife made confidential by statute); Pa. Bar Ass'n Informal Op. 93-135 (1993) (Rule 4.4 prohibits lawyer from conducting surreptitious inspection of psychiatric records of major witness against client; although information would be very useful in impeaching witness, Pennsylvania caselaw makes such records absolutely confidential); N.J. Sup. Ct. Adv. Comm. on Prof. Ethics Op. 680 (1995) (if lawyer has surreptitiously copied confidential documents in possession of attorneys for adverse party, and items of evidence were involved, it would constitute a violation of Rule 4.4).





**Program on Negotiation at Harvard Law School**
**Program of Instruction for Lawyers @ PON**
**JUNE 2007**

The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | **Directions/Parking**
©**2007** District of Columbia Bar. All rights reserved. **Privacy Policy** | **Disclaimer** | **Author guidelines**