IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDERRAHIM TNAIB ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV01825 |
| ) | |
| DOCUMENT TECHNOLOGIES, INC. ) | |
| ) | |
| -and- ) | |
| ) | |
| JAMES MCGUIRE ) | |
| 2310 BELLOW COURT ) | |
| CROFTON, MD 21114 ) | |
| 410-570-4700 ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT MCGUIRE'S SURREPLY TO DEFENDANT DOCUMENT TECHNOLOGIES' REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER AGAINST JAMES MCGUIRE

Defendant James McGuire ("McGuire") acting as a *Pro Se* litigant respectfully submits this Surreply to the Defendant Document Technologies' ("DTI") Reply to the Opposition to the Motion for a Protective Order against Defendant James McGuire.

DTI's Reply ("Reply") to McGuire's Opposition ("Opposition") to the Motion for a Protective Order against McGuire attempts to support a claim that a Protective Order against McGuire is necessary by citing the same District of Columbia Bar Legal Ethics Committee ("Committee") Opinions ("Opinion") found in the Opposition.

The Opinion No. 129 specifically deals with the question of whether a <u>lawyer</u> can interview employees of an opposing party and what defines the distinction between party

employees from non-party employees. The Opinion No. 129 is necessitated by the application of Committee Rule 4.2(b) which reads "During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee of the opposing party without obtaining the consent of that party's lawyer. However, prior to communicating with any such nonparty employee, a lawyer must disclose to such employee both the lawyer's identity and the fact that the lawyer represents a party with a claim against the employee's employer."[1]

The Opinion No. 258 specifically deals with the question of whether <u>lawyers</u> proceeding *pro se* must abide by Rule 4.2. This Opinion is best summed up by its final paragraph "But, unlike the lay party, the pro se lawyer brings her professional skills and legal knowledge with her whenever she deals with her lay adversary. The lawyer-party, no matter whether she is acting in her "lawyer" or her "party" capacity, still retains a presumptively unfair advantage over an opposing party. We therefore conclude that a lawyer must comply with the requirements of Rule 4.2(a) when she represents a client, be that client the lawyer herself or another party."

DTI attempts to skew these Opinions to support their claim that McGuire acting as a non-lawyer *pro se* litigant is barred from interviewing, without counsel present, the party or non-party employees of DTI. This is pure conjecture on their part and is simply incorrect. In the end, DTI admits that parties may speak with one another without counsel present. "DTI does not dispute

---

[1] Effective February 1, 2007 the Rule 4.2 will be changed from "Communication Between Lawyer and Opposing Parties" to "Communication Between Lawyer and Represented By Counsel" and Rule 4.2(b) will be changed to read "During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee of an organization without obtaining the consent of that organization's lawyer. If the organization is an adverse party, however, prior to communicating with any such nonparty employee, a lawyer must disclose to such employee both the lawyer's identity and the fact that the lawyer represents a party that is adverse to the employee's employer."

that the parties in the lawsuit may freely discuss the litigation and other matters far from the concern of the Bar and the Court." *See* Reply pg. 3 ¶ 3.

DTI then raises a new and very serious allegation that McGuire used dishonest and deceitful tactics in which to acquire affidavits of the three DTI employees. DTI now claims that McGuire purposely withheld or misstated the fact that DTI was also a named party in this litigation. "Moreover, DTI has learned that McGuire allowed the three individuals who signed his affidavits to believe that the affidavits related to a dispute between him and Plaintiff individually, not a dispute that involved DTI, their current employer." *See* Reply pg. 2 ¶ 2.

McGuire admits that he found it necessary to stress to the affiants that he was being sued in his individual capacity because the employees that signed the affidavits were shocked that DTI felt no legal, ethical or moral obligation to defend McGuire in this litigation, even though McGuire was an employee of DTI during the time in which the allegations that make up the Complaint, were supposedly to have occurred. McGuire had to make it clear that he was defending himself in this very serious litigation but at no time did he mislead or misstate any elements of the litigation including the fact that DTI was also a named party in this legal action. In fact the affidavits in question, that were signed and initialed by the DTI employees, are clearly entitled with the court name, case number, plaintiff's name and defendants names which read "Defendants: Document Technologies, LLC. and James McGuire." *See* Attachments A, B and C.

DTI goes on to allude that perhaps McGuire may have coaxed two of the three employees into signing the affidavits because of some influence he may have based on the fact that they were supervised by McGuire almost three years ago. DTI makes this allegation without any evidence and by ignoring the affidavits opening paragraph which reads "I make these statements voluntarily and have not been coerced, pressured or promised anything in exchange for these

statements." *See* Attachments A, B and C. Surely any supposed influence that DTI claims McGuire to have over these two particular employees would certainly pale in comparison to the influence that DTI itself can exert as the current employer of the individuals that have signed affidavits in connection with DTI's Reply.

In opposing DTI's Motion for a Protective Order, McGuire is only trying to protect his right as a party to this litigation to speak with the other parties without the cost and burden of counsel. As well as invoke the same rights offered to lawyers under Committee Rule 4.2(b) to speak with non-party employees of an organization without the consent of that organization's lawyer, especially considering that we are not on opposing sides of this litigation.

Respectfully Submitted
James J. McGuire

_____
James J. McGuire
**PRO SE**
2310 Bellow Court
Crofton, MD 21114
(410) 570-4700

DATED: January 16, 2007

# ATTACHMENT A

## Affidavit of Lakeisha McMillan

**COURT:** United States District Court for the District of Columbia
**CASE #:** 1:05cv01825
**Plaintiff:** Abderrahim Tnaib
**Defendants:** Document Technologies, LLC. and James McGuire

I, Lakeisha McMillan, being neither a party nor an interested person in the above entitled action herby make the following statements based on personal observation and first hand knowledge. I make these statements voluntarily and have not been coerced, pressured or promised anything in exchange for these statements.

1. I am an African American woman over the age of 18 and am currently employed with Document Technologies LLC. (DTI)
2. I reside at 4311 23rd Parkway, Apt. 202 Temple Hills, Maryland 20748
3. I am the twin sister of Makeisha McMillan, also an employee of DTI, and someone who also worked in a similar position as myself.
4. I have worked with and known James McGuire (Jim) from the date he started with DTI in March 2003 until the date he resigned in April 2004.
5. At the time that I worked with and for Jim, I was employed as a Shift Coordinator, (this is a position that is the equivalent of an Assistant Supervisor) and one of my main responsibilities was the assigning of projects to production employees in order of deadline.
6. My position required me to work in a close proximity with Jim on a daily basis.
7. I have never heard Jim refer to Abderrahim Tnaib (RT) in any language that could be construed as racially offensive either in or outside of his presence.
8. I have never heard Jim say any of the following phrases: "Camel Boy"; "Osama"; "Osama Bin Laden"; "stupid Moroccan" or "dumb Moroccan" to RT or in reference to RT, in or outside of RT's presence, within the workplace or outside of it.
9. I have never heard Jim make any racially or ethically offensive remarks toward anyone, at anytime, anywhere.
10. I have never heard from another person that Jim was heard making racially or ethically offensive comments.
11. I have never heard Jim say any of the following phrases: "You black people really do love your fried chicken and pork don't you"; "I do not intend to hire any more black managers because they are just not reliable" or "getting ghetto".
12. I have never heard Jim ever ask me or any other production employee to ever work on a production job out of deadline order.

Lakeisha McMillan  *(signature)*

Page 1 of 1

13. I have heard Jim and RT argue frequently, but have never heard Jim ever use any racial or ethnic slurs or insults toward RT or to anyone else.

14. I personally witnessed the argument between Jim and RT that took place in October 2003, which ended with RT slamming an office door so hard that it split the door lengthwise. RT was clearly the aggressor in this argument and at no time in the exchange did Jim say anything to RT that could be considered a racial slur or an ethnic insult. I wrote a witness statement about the argument that was given to Scott Heon, the Managing Partner of the office.

15. I personally witnessed RT slam the office door that split the door lengthwise.

16. I have often heard RT refer to himself, using a negative racial comment in an attempt to be humorous. I have specifically heard RT refer to himself as a "stupid Moroccan" or "dumb Moroccan" on many occasions.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7th 2006

Signed

*Lakeisha McMillan*
Lakeisha McMillan

# ATTACHMENT B

## Affidavit of Makeisha McMillan

**COURT:** United States District Court for the District of Columbia
**CASE #:** 1:05cv01825
**Plaintiff:** Abderrahim Tnaib
**Defendants:** Document Technologies, LLC. and James McGuire

I, Makeisha McMillan, being neither a party nor an interested person in the above entitled action herby make the following statements based on personal observation and first hand knowledge. I make these statements voluntarily and have not been coerced, pressured or promised anything in exchange for these statements.

1. I am an African American woman over the age of 18 and am currently employed with Document Technologies LLC. (DTI)

2. I reside at 4311 23rd Parkway, Apt. 202 Temple Hills, Maryland 20748

3. I am the twin sister of Lakeisha McMillan, also an employee of DTI, and someone who also worked in a similar position as myself.

4. I have worked with and known James McGuire (Jim) from the date he started with DTI in March 2003 until the date he resigned in April 2004.

5. At the time that I worked with and for Jim, I was employed as a Shift Coordinator, (this is a position that is the equivalent of an Assistant Supervisor) and one of my main responsibilities was the assigning of projects to production employees in order of deadline.

6. My position required me to work in a close proximity with Jim on a daily basis.

7. I have never heard Jim refer to Abderrahim Tnaib (RT) in any language that could be construed as racially offensive either in or outside of his presence.

8. I have never heard Jim say any of the following phrases: "Camel Boy"; "Osama"; "Osama Bin Laden"; "stupid Moroccan" or "dumb Moroccan" to RT or in reference to RT, in or outside of RT's presence, within the workplace or outside of it.

9. I have never heard Jim make any racially or ethically offensive remarks toward anyone, at anytime, anywhere.

10. I have never heard from another person that Jim was heard making racially or ethically offensive comments.

11. I have never heard Jim say any of the following phrases: "You black people really do love your fried chicken and pork don't you"; "I do not intend to hire any more black managers because they are just not reliable" or "getting ghetto".

12. I have never heard Jim ever ask me or any other production employee to ever work on a production job out of deadline order.

Makeisha McMillan _[signature]_

Page 1 of 1

13. I have heard Jim and RT argue frequently, but have never heard Jim ever use any racial or ethnic slurs or insults toward RT or to anyone else.

14. I personally witnessed the argument between Jim and RT that took place in October 2003, which ended with RT slamming an office door so hard that it split the door lengthwise. RT was clearly the aggressor in this argument and at no time in the exchange did Jim say anything to RT that could be considered a racial slur or an ethnic insult. I wrote a witness statement about the argument that was given to Scott Heon, the Managing Partner of the office.

15. I have often heard RT refer to himself, using a negative racial comment in an attempt to be humorous. I have specifically heard RT refer to himself as a "stupid Moroccan" or "dumb Moroccan" on many occasions.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7th 2006

Signed

*[signature]*

Makeisha McMillan

# ATTACHMENT C

## Affidavit of Scott Bridgers

**COURT:** United States District Court for the District of Columbia
**CASE #:** 1:05cv01825
**Plaintiff:** Abderrahim Tnaib
**Defendants:** Document Technologies, LLC. and James McGuire

I, Scott Bridgers, being neither a party nor an interested person in the above entitled action herby make the following statements based on personal observation and first hand knowledge. I make these statements voluntarily and have not been coerced, pressured or promised anything in exchange for these statements.

1. I am over the age of 18 and am currently employed with Document Technologies LLC. (DTI)

2. I reside at 61 Elan Court, Alpharetta GA 30022

3. I have worked with and known James McGuire (Jim) from the date he started with DTI in March 2003 until the date he resigned in April 2004.

4. At the time that I worked with Jim, I was employed as the Business Manager.

5. My position required me to work in a close proximity with Jim on a daily basis.

6. I have never heard Jim refer to Abderrahim Tnaib (RT) in any language that could be construed as racially offensive either in or outside of his presence.

7. I have never heard Jim say any of the following phrases: "Camel Boy"; "Osama"; "Osama Bin Laden"; "stupid Moroccan" or "dumb Moroccan" to RT or in reference to RT, in or outside of RT's presence, within the workplace or outside of it.

8. I have never heard from another person that Jim was heard making racially or ethically offensive comments.

9. I have never heard Jim say any of the following phrases: "You black people really do love your fried chicken and pork don't you"; "I do not intend to hire any more black managers because they are just not reliable" or "getting ghetto".

10. I have heard Jim and RT argue frequently, but have never heard Jim ever use any racial or ethnic slurs or insults toward RT or to anyone else.

11. I have often heard RT refer to himself, using a negative racial comment in an attempt to be humorous. I have specifically heard RT refer to himself as a "stupid Moroccan" or "dumb Moroccan" on many occasions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11/13/06

Signed

*Scott Bridgers*

Scott Bridgers

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of January 2007, copies of the foregoing Defendant James McGuire's Motion for Leave to File Surreply to Defendant Document Technologies' Reply to Opposition for Protective Order against James McGuire with attachment of Surreply and Proposed Order Granting Defendant James McGuire's Motion for Leave to File Surreply to Defendant Document Technologies' Reply to Opposition for Protective Order against James McGuire were mailed first-class, postage pre-paid, to:

Howard N. Berliner, Esq.
1920 N Street, N.W. Suite 300
Washington, D.C. 20036

*Attorney for Plaintiff Abderrahim Tnaib*

Powell Goldstein, LLP
Attn: Tricia A. Kinney, Esq.
1201 West Peachtree Street, NW
14th Floor
Atlanta, GA 30309-3488

*Attorney for Co-Defendant Document Technologies, Inc.*

_____
James J. McGuire